RQ 1009



# THE ATTORNEY GENERAL
## OF TEXAS

March 2, 1987

JIM MATTOX
ATTORNEY GENERAL

Honorable Bevil B. Wright        Opinion No. JM-641
Hardin County Attorney
P. O. Box 516                    Re: Whether a county tax rate increase
Kountze, Texas    77625          to provide for indigent health care
                                 services is subject to a rollback
                                 election under section 26.07 of the
                                 Tax Code, and related questions

Dear Ms. Wright:

The Sixty-ninth Legislature enacted in special session the Indigent Health Care and Treatment Act [hereinafter the act], which requires governmental entities to provide certain health care services to indigent residents. Acts 1985, 69th Leg., 1st C.S., ch. 1, at 3777. Sections 2 and 3 of the act amended sections 26.04, 26.06, and 26.07 of the Tax Code, which set forth the requirements for the effective ad valorem tax rate calculation, for the content of the notice of the public meetings held prior to the adoption of the tax rate, and for the tax rate rollback petition and election procedures, respectively, with which taxing units must comply. You ask us three questions regarding the effect of the act and its amendatory provisions.

Section 26.04 of the Tax Code sets forth the method by which the so-called "effective tax rate" is calculated by each taxing unit prior to the adoption of its ad valorem tax rate. The "effective tax rate" is that tax rate which, when imposed upon the property that was taxed last year but using this year's appraised values, will produce approximately the amount of revenue that was produced last year. See Tex. Const. art. VIII, section 21; Attorney General Opinion MW-495 (1982). Section 26.05 of the Tax Code provides that, if a taxing unit adopts a tax rate that exceeds the effective tax rate by more than three percent, the taxing unit must hold a public hearing on the proposed increase and publish a specified public notice of the meeting prior to its being held. See Tax Code §26.06. Section 26.07 of the Tax Code permits qualified voters of the taxing unit by petition to require that a tax rate rollback election be held if the adopted rate exceeds the effective rate by more than eight percent. If the election is successful, the adopted rate is reduced to "a rate that exceeds the rate calculated by section 26.04 of this code by only eight percent." Tax Code §26.07(a).

The amendments to sections 26.04, 26.06, and 26.07 of the Tax Code contained in the act effectively segregate out the amount of the tax rate increase attributable to the costs of providing in the first year the health services required by the act. Section 26.04(e) was amended by the act to include among the items of information that the taxing unit is required to publicize in connection with the calculation of its effective tax rate

> a schedule of the unit's expenses in providing services required by the Indigent Health Care and Treatment Act . . . showing the amount of required expense which will be paid in the next year from property tax revenues, the amount of required expense paid in the preceding year from property tax revenues, and the amounts of state reimbursement, if any, received or expected for either year.

Tax Code §26.04(e)(4).

Section 26.06 was amended by the addition of subsection (f), which lists the items of information that the published notices for the ad valorem tax rate increase and for the vote on the adoption of the tax rate must contain for those taxing units that offer health services as required by the act. Each notice is required to specify explicitly the percentage of the tax rate increase which is attributable to the costs of providing the required indigent health care services. Each such notice must contain the following:

> (Percentage of increase over the tax rate required to levy amount needed for indigent health care services) percent of the increase will be used to pay for services required by the Texas Legislature in the Indigent Health Care and Treatment Act. . . .

Tax Code §26.06(f).

Finally, section 26.07 was amended by the addition of subsection (h). It is with this section that you are concerned. Section 26.07, as amended, provides the following in pertinent part:

Sec. 26.07. Election to Repeal Increase.

> (a) If the governing body of a taxing unit other than a school district adopts a tax rate that exceeds the rate calculated as provided by Section 26.04 of this code by more than eight percent, the qualified voters of the taxing unit by petition may require that an election be held to determine whether or not to reduce the tax rate adopted for

the current year to a rate that exceeds the rate calculated as provided by Section 26.04 of this code by only eight percent.

. . . .

(d) If the governing body finds that the petition is valid (or fails to act within the time allowed), it shall order that an election be held in the taxing unit on a date not less than 30 or more than 90 days after the last day on which it could have acted to approve or disapprove the petition. A state law requiring local elections to be held on a specified date does not apply to the election unless a specified date falls within the time permitted by this section. At the election, the ballots shall be prepared to permit voting for or against the proposition:  'Reducing the tax rate in (name of taxing unit) for the current year from (the rate adopted) to (the rate that is only eight percent greater than the rate calculated as provided by Section 26.04 of this code).'

(e) If a majority of the qualified voters voting on the question in the election favor the proposition, the tax rate for the taxing unit for the current year is the tax rate that is eight percent greater than the rate calculated as provided by Section 26.04 of this code; otherwise, the tax rate for the current year is the one adopted by the governing body.

. . . .

(h) Notwithstanding Subsection (a) of this section, if in the first year after the effective date of this Act the governing body of a taxing unit other than a school district increases its tax rate to provide health care services that the governing body is required to provide to its residents under the Indigent Health Care and Treatment Act (S.B. 1, Acts of the 69th Legislature, 1st Called Session, 1985) the adopted tax rate that allows voters to seek to reduce the tax rate under this section must exceed the rate calculated under Section 26.04 of this code by eight percent plus that rate which, applied to the total taxable value submitted to the governing body, would impose taxes in an amount equal to the amount which the governing body would be required to pay out of property taxes to provide services required by the.

> Indigent Health Care and Treatment Act less the amount the governing body paid out of property taxes to provide the equivalent services in the preceding year and less any state reimbursement which the governing body expects to receive pursuant to Subtitle D of Title 2 of the Indigent Health Care and Treatment Act. (Emphasis added).

You first ask us

> [w]hether Hardin County is entitled to include in its adopted tax rate for 1986 an increase to provide for the additional cost of indigent health care services required under the Indigent Health Care and Treatment Act and if such increase would be subject to a rollback under amended section 26.07 of the Property Tax Code.

We addressed your first question in Attorney General Opinion JM-528 (1986). In that opinion, the question posed was:

> [I]n an instance in which there has been a successful tax rate rollback election and in which the adopted rate includes a rate increase attributable to the additional costs incurred by providing the indigent health care services required by the act, whether the rate increase for providing those health care services is also rolled back.

We set out the amendments to each section of the Tax Code and discussed the legislative history of the portions of the bill at issue. We then concluded:

> It is clear from a reading of the act that the provisions amending the Tax Code, taken together, were meant to isolate that portion of the tax rate increase attributable to providing the services required by the act. It would make little sense for the legislature to require certain taxing units to offer specified health care services to indigents, to set forth tax rate calculation and notice procedures segregating from a tax rate increase that portion of the rate increase attributable to the costs of providing such services, and to make that percentage rate increase necessary to trigger the rollback provisions in the first place eight percent over the effective rate plus the portion of the rate increase attributable to the costs of providing the services, and then to intend that the 'rolled-back' rate be set at

> eight percent over the effective rate. The
> legislature did not intend a construction that
> would impair the ability of taxing units to
> provide the services required by the act.

Attorney General Opinion JM-528 at 5-6. It is clear from an even cursory reading of the amendments to the ·Tax Code that Hardin County is not merely "entitled" to include in its adopted tax rate for 1986 an increase in tax rate attributable to the additional costs incurred by the county of complying with the Indigent Health Care and Treatment Act; the county is <u>required</u> to do so. And it is equally clear that any such 1986 percentage rate increase would not be subject to a rollback if a successful election were held pursuant to section 26.07 of the Tax Code. The rollback limitations applicable to health care taxation apply only "in the first year after the effective date of [the act]," 1985. Tax Code §26.07(h).

You next ask

> [w]hether the Commissioners Court of Hardin County
> is required to order an election under amended
> section 26.07 of the Property Tax Code if Hardin
> County is entitled to include in its adopted tax
> rate for 1986 an increase to provide for the
> additional cost of indigent health care services
> required under the Indigent Health Care and
> Treatment Act and if so what tax rate should be
> set.

Again, we implicitly answered the first part of your second question in Attorney General Opinion JM-528 (1986). Therein we declared that

> [i]n an instance in which a taxing unit provides
> services as required by the Indigent Health Care
> and Treatment Act and in which there has been a
> successful tax rate rollback election in the first
> year in which those services are provided,
> subsection 26.07(a), when construed with
> subsection 26.07(h), sets the 'rolled-back' rate
> at eight percent over the effective rate plus the
> additional percentage increase attributable to the
> costs of providing the services required by the
> act.

A corollary to this proposition is that the tax rate percentage increase that triggers the rollback provisions in ·the first place is eight percent over the effective rate irrespective of any rate percentage increase attributable to the costs of providing indigent

health care and treatment; the indigent health care portion is simply segregated out of the calculation.[1]

Your final question is:

> [w]hether the effective tax rate as calculated by the County Tax Assessor according to section 26.04 of the Property Tax Code must be corrected if there has been an error made by the appraisal office in its information provided to the County Tax Assessor after (1) the tax rate has been publicized as provided by section 26.04(e) of the Property Tax Code; (2) adopted by the county commissioners court; (3) Tax Statements have been sent; (4) the deadline of January 31 has passed for the payment of taxes without penalty.

We understand you to ask whether the county tax assessor is affirmatively required to re-calculate the effective tax rate after the tax plan has already been put into effect if the appraisal office has supplied to the assessor erroneous information upon which he based his effective tax rate calculation. We answer your question in the negative.

Section 26.01 of the Tax Code requires the chief appraiser to prepare and certify to the assessor for each taxing unit that part of the appraisal roll for the appraisal district that lists the property taxable by the taxing unit. Subsections 26.04(a) and (b) provide the following:

> (a) On receipt of the appraisal roll, the assessor for a taxing unit shall determine the total appraised value, the total assessed value, and the total taxable value of property taxable by

---

1. For example, if the county's effective tax rate were $.50/$100 valuation, the amount of tax rate increase attributable to indigent health care costs were $.05/$100 valuation, and the amount of tax rate increase attributable to increased expenditures other than indigent health care were $.06/$100 valuation, the rate that the county would seek to adopt is $.50 + $.05 + $.06, $.61/$100 valuation, a 22% increase over the effective tax rate. The proposed rate increase percentage that would trigger the rollback provisions, however, is 12%, i.e. the $.06/$100 valuation increase attributable to non-indigent health care costs.

the unit. He shall also determine, using in-
formation provided by the appraisal office, the
appraised, assessed, and taxable value of property
added to the appraisal roll since the preceding
tax year by annexation of territory and the
appraised, assessed, and taxable value of the
improvements on the roll that were made after
January 1 of the preceding tax year. The sum of
the taxable value of annexed property and the
taxable value of improvements made after January 1
of the preceding tax year is the taxable value of
new property.

(b) The assessor shall submit the appraisal
roll for the unit showing the total appraised,
assessed, and taxable values of all property and
the total taxable value of new property to the
governing body of the unit by August 1 or as soon
thereafter as practicable.

Subsections (c) and (d) of section 26.04 of the Tax Code then set
forth the elaborate effective tax rate calculation required by article
VIII, section 21, of the Texas Constitution.

The only affirmative obligations imposed by chapter 26 of the
code on the taxing units' assessors regarding the rate calculation
are specifically set forth therein. The code imposes no further
affirmative obligation on the assessors. Indeed, the code offers no
mechanism or procedure by means of which a taxing unit's assessor
could re-calculate the effective rate. The legislature has created at
subsection (h) of section 26.04 of the Tax Code a remedy in the event
that the requirements of section 26.04 are not complied with. This
provision sets forth the following:

A person who owns taxable property is entitled to
an injunction prohibiting the taxing unit in which
the property is taxable from adopting a tax rate
if the assessor or designated officer or employee
of the unit, as applicable, has not complied with
the computation or publication requirements of
this section and the failure to comply was not in
good faith.

After the tax plan has been put into effect, the only remedy lies with
an aggrieved taxpayer seeking to enjoin enactment of the tax scheme.
See, e.g., State v. Whittenburg, 265 S.W.2d 569 (Tex. 1954); City of
Arlington v. Cannon, 271 S.W.2d 414 (Tex. 1954); Jackson v. Maypearl
Independent School District, 392 S.W.2d 892 (Tex. Civ. App. - Waco
1965, no writ). We conclude, then, that the assessor is not empowered
to re-calculate the effective tax after the tax plan has been put into

effect; the exclusive statutory remedy is that created by the legislature in subsection (h) of section 26.04.

### S U M M A R Y

The county is required to include in its adopted tax rate for 1986 an increase sufficient to provide for the additional costs incurred because of the Indigent Health Care and Treatment Act. Any such increase would not be subject to the tax rate rollback provisions of section 26.07 of the Tax Code. The county commissioners are not authorized to accept a rollback election petition unless the rate adopted exceeds the effective tax rate by more than eight percent, calculated without regard for any percentage increase attributable to costs incurred by complying with the Indigent Health Care and Treatment Act. The tax assessor is not empowered to re-calculate the effective tax rate after the tax plan is in effect in the event that the effective rate was incorrectly calculated. The only remedy which the legislature created in such an instance is set forth in subsection (h) of section 26.04 of the Tax Code and provides that a person who owns taxable property is entitled to an injunction in certain instances.

Very truly yours

JIM MATTOX
Attorney General of Texas

JACK HIGHTOWER
First Assistant Attorney General

MARY KELLER
Executive Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Jim Moellinger
Assistant Attorney General